23 F.3d 411
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Sarah Mensah HAMILTON, Defendant-Appellant.
 No. 93-2343.
 United States Court of Appeals, Seventh Circuit.
 Argued March 29, 1994.
Decided April 6, 1994.
 
 Before CUMMINGS, EASTERBROOK and KANNE, Circuit Judges.
 
 Order
 
 1
 Customs officials found a large quantity of heroin in a hidden compartment of a suitcase Sarah Mensah Hamilton was carrying when she arrived in the United States from Ghana. At trial she testified that someone else had given her the suitcase, and that she was unaware of the existence of the compartment. This defense made it essential for the jury to determine whether Hamilton was telling the truth. Most of her arguments on appeal are variations on the theme that the prosecutor used inappropriate means to undermine her credibility.
 
 
 2
 On direct examination Hamilton testified that she had worked in the United States as a nurse since her admission to permanent residence. The prosecutor began to question her about employment, leading to retractions. For two years she was unemployed, she allowed, and some of the time she worked she was not practicing as a nurse. The prosecutor asked whether she had worked for a Robert Owusu; she denied knowing the gentleman. At this point the prosecutor produced two letters of recommendation. One, signed by Robert Owusu, narrated that Hamilton had worked for two years under his supervision. The second letter described another period of employment. These letters implied that Hamilton was just making up a story for the jury's benefit and could not remember the employment history she had fabricated. More: the prosecutor observed that the letters bore the same date, had similar phraseology (curiously, each began by giving defendant's Social Security number), and appeared to have been typed on the same typewriter. This led the prosecutor to inquire whether Hamilton had not written both letters.
 
 
 3
 The judge barred the prosecutor from arguing to the jury that the letters had been faked, but the court permitted the prosecutor to argue that the letters showed that defendant was being creative in the story narrated on direct examination. This was an entirely proper method of impeachment, see Fed.R.Evid. 608, and the restrictions the district judge placed on the prosecutor's use of the letters amply protected Hamilton's rights. A cross-examiner need not offer extrinsic proof of factual propositions implied during the examination. It is enough to have a reasonable basis for the questions. United States v. Finley, 934 F.2d 837 (7th Cir.1991); United States v. Elizondo, 920 F.2d 1308, 1313 (7th Cir.1990). The letters themselves provided a reasonable basis for the use the prosecutor made of them.
 
 
 4
 Decisions on the remaining evidentiary matters likewise were within the discretion of the trial judge. We need not address them separately.
 
 
 5
 As for the jury instructions: the judge gave pattern instructions on the crime of importing forbidden drugs. Several times the instructions informed the jury that the charge was "intentionally" importing heroin. Intent was the only contested issue at trial; the jury could not possibly have been in doubt about the need to find intent and knowledge, when this subject was not only covered by the instructions but also the exclusive focus of the debate between the parties.
 
 
 6
 AFFIRMED.